UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

)
RODNEY CARSON,                              )
                                           )
        Plaintiff,                         )
                                           )
        v.                                 )      Civil Action No. 04-1641 (RWR)
                                           )
WILLIAM SIM et al.,                        )
                                           )
        Defendants.                        )

---

## MEMORANDUM OPINION AND ORDER

Plaintiff Rodney Carson brings this action against his
former employer, the Potomac Electric Power Company ("Pepco") and
its President, William Sim, alleging in his amended complaint
claims of discrimination and retaliation based on race, sex, and
disability in violation of Title VII of the Civil Rights Act of
1964, 42 U.S.C. § 2000e et seq., and the Americans with
Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., intentional
infliction of emotional distress, and breach of contract.  The
defendants have moved to dismiss Carson's amended complaint.
Because Carson has stated a race discrimination claim regarding a
promotion denied him in 2003, the motion will be denied as to
that claim.  As to the remaining claims, because Carson failed to
exhaust his administrative remedies for some claims or otherwise
failed to state a claim for which relief can be granted for
others, and alleges yet other claims that are preempted by
statute, those remaining claims will be dismissed.

BACKGROUND

Carson, a black male born in 1963, worked at Pepco for fifteen years and achieved a pay grade of 13. (Am. Compl. ¶ 5, Ex. 1 ("Carson Aff.") ¶¶ 1, 11.) On several occasions, Carson was temporarily promoted to crew leader with a pay grade of 15, and to lead mechanic with a pay grade of 17. However, Carson never received a permanent promotion above pay grade 13. (Carson Aff. ¶¶ 12-14, 17-19.) According to Carson, when he was the second-most senior employee in his career field at Pepco and he had completed all the requirements to become a crew leader, he asked for the second time to be promoted and to enroll in the training program for lead mechanic. (Id. ¶¶ 14-15, 18-20.) Pepco responded by allegedly refusing to assign Carson to any more temporary upgrades, while giving temporary upgrades to a woman with allegedly less experience and seniority. (Id. ¶¶ 23-26, 28-30, 33-34.) Pepco also denied Carson's promotion and additional enrollment request. Instead, it promoted to the crew leader position a "non-minority" male allegedly with less qualifications, experience and seniority, and after enrolling him in the lead mechanic training program, promoted him to the lead mechanic position. (Id. ¶¶ 21-22, 31-32.)

Carson filed a complaint with Pepco's Human Resources department, alleging that Pepco discriminated against him and subjected him to a hostile work environment. (Carson Aff. ¶ 35.)

Carson alleges that three days after he filed that complaint, he was retaliated against by Pepco when a co-worker falsely reported that Carson did not complete an assignment correctly. (<u>Id.</u> ¶ 36.) Carson also asserts that he suffered what he describes as an "emotional breakdown" that resulted in a "work related Depressive Disorder." (<u>Id.</u> ¶¶ 38-39.) In January 2004, Carson filed with the D.C. Office of Human Rights and the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination alleging that Pepco discriminated against him based upon race and sex, and retaliated against him. The charge of discrimination stated, in relevant part:

> I, Rodney Carson, believe I have been discriminated against by my employer based on my race (Black) and sex (male) by being denied promotion, subjected to a hostile work environment, and being subjected to a loss of pay, leave, and overtime. I have also been subjected to retaliation, after I complained about the discrimination.

> * * *

> From 1/02 to 8/03, I functioned in a temporary upgrade in the position of Crewleader. However, when I officially applied for the promotion in 10/03, I did not get the job. Although there were two vacancies, the jobs were given to two less-qualified employees with less seniority. This was an intentional interference with employee and union contracts. On 8/15/03, the foreman (black male) told my co-worker that I thought I "knew everything" and that he has a "trick" for me. On 9/30/03, the general foreman (white male) told my foreman to "watch me." And on 10/9/03, the foreman told two of my co-workers that he was trying to "get" me.

> * * *

From 3/31/03 to 9/29/03, I was performing the job of
Lead Mechanic-grade 17.  On 9/29/03, I was told that I
was no longer needed in that position and was sent back
to the temporary Crewleader position.  That same day a
co-worker (black female) returned from a medical leave
and was given the Mechanic position.  Prior to her
medical leave, she was in the Conduit Department-grade
13.  I have more seniority than my female co-worker and
should not have been removed from that position.

(Pl.'s Opp'n to Pepco's Mot. to Dismiss or for Summ. J. ("Pl.'s
Opp'n"), Ex. 5 at 1-2.)  In addition, according to Carson, Pepco
terminated his employment in 2006 in retaliation for complaining
about the discrimination and the hostile work environment and
insisting that Pepco provide workers compensation.  (Carson Aff.
¶ 2.)

Carson's amended complaint contains eight counts.  Counts I
and II allege claims of race and sex discrimination in violation
of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e
et seq., for failing to promote him to vacancies at pay grades 15
or 17 and thrice failing to enroll him in the training program
for the lead mechanic, pay grade 17 position.  They also allege a
variety of other discriminatory incidents, such as an August 2003
rescission of a temporary promotion, several occasions between
August and December 2003 where Pepco purportedly decided not to
temporarily upgrade Carson, and Carson's supervisor wrongly
accusing Carson of failing to complete a task correctly.  The
amended complaint also alleges claims of breach of contract for
denying Carson medical and workers compensation benefits from

2003 through 2006 and for denying Carson entry into training

programs that would have made him eligible for promotion (Counts

III through V); disability discrimination in violation of the ADA

by failing to accommodate him despite the fact that he was

disabled by workplace stress (Count VI); intentional infliction

of emotional distress (Count VII); and retaliatory discharge

(Count VIII).  The defendants have moved to dismiss or for

summary judgment, arguing that all counts should be dismissed

against defendant Sim because Carson does not allege any act or

omission on behalf of Sim[1]; that judgment should be entered for

the defendants on counts I and II because Carson did not exhaust

his administrative remedies for the incidents not raised in his

EEOC charge, and the remaining incidents are insufficient as a

matter of law to support a claim of discrimination; that Counts

III through V should be dismissed because breach of contract

claims are preempted by a collective bargaining agreement ("CBA")

and Carson failed to exhaust the grievance and arbitration

provisions of the CBA and failed to timely raise such claims;

that Count VI should be dismissed for failure to exhaust

administrative remedies because Carson did not file a charge of

---

[1] Carson has waived or conceded this issue by completely
failing to address or rebut the defendants' arguments.  Therefore
all claims against defendant Sim will be dismissed.  See CSX
Transp., Inc. v. Commercial Union Ins., Co., 82 F.3d 478, 482-83
(D.C. Cir. 1986); Maib v. F.D.I.C., Civil Action No. 09-1261
(RWR), 2011 WL 1028000, at *5 (D.D.C. March 23, 2011); Felter v.
Salazar, 679 F. Supp. 2d 1, at 4 n.2 (D.D.C. 2010).

disability discrimination with the D.C. Office of Human Rights or
the EEOC; that Carson's intentional infliction of emotional
distress should be dismissed because it is preempted by the CBA
and the D.C. Workers' Compensation Act, and that even if it were
not preempted, the amended complaint fails to allege a plausible
claim of intentional infliction of emotional distress; and that
Carson's retaliatory discharge claim should be dismissed because
the amended complaint fails to allege a plausible claim of
retaliatory discharge.  Carson opposes the defendants' motion.

DISCUSSION

A complaint can be dismissed under Federal Rule of Civil
Procedure 12(b)(6) when the complaint fails to state a claim upon
which relief can be granted.  Peavey v. Holder, 657 F. Supp. 2d
180, 185 (D.D.C. 2009) (citing Fed. R. Civ. P. 12(b)(6)).
"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of
a complaint."  Smith-Thompson v. Dist. of Columbia, 657 F. Supp.
2d 123, 129 (D.D.C. 2009).

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, acceptable as true,
> to "state a claim to relief that is plausible on its
> face." . . .  A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court
> to draw the reasonable inference that the defendant is
> liable for the misconduct alleged.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell
Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)).  The
complaint must be construed in the light most favorable to the

plaintiff and "the court must assume the truth of all well-pleaded allegations." <u>Warren v. Dist. of Columbia</u>, 353 F.3d 36, 39 (D.C. Cir. 2004). In deciding a motion brought under Rule 12(b)(6), a court does not consider matters outside the pleadings, but a court may consider on a motion to dismiss "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," <u>Gustave-Schmidt v. Chao</u>, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), or "documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss," <u>Hinton v. Corr. Corp. of Am.</u>, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (quoting <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 706 (9th Cir. 1998)).

I.   DISCRIMINATION AND RETALIATION

In Count I of his amended complaint, Carson alleges that he applied for a promotion to pay grades 15 and 17 in 2003, but Pepco denied it on the basis of his race and his sex. (Am. Compl. ¶¶ 6-7, Carson Aff. ¶¶ 18-21.) In Count II, Carson alleges that Pepco discriminated against him on the basis of his race and his sex in 2003 by twice refusing to enroll him in a training program for a promotion to the position of lead mechanic, pay grade 17. (Am. Compl. ¶ 12, Carson Aff. ¶¶ 18-21, 31.) The defendants argue that these counts should be dismissed because Carson should be allowed to advance only claims he

included in his charge of discrimination, which they claim did

not include those in Counts I and II.  The defendants then argue

that the two claims that Carson did include in his charge of

discrimination -- the October 2003 denial of his application for

a promotion to a crew leader position, and the September 2003

revocation of his temporary assignment to the lead mechanic

position and subsequent reassignment of that position to a

purportedly less qualified woman (Defs.' Mem. in Supp. of Mot. to

Dismiss or for Summ. J. ("Defs.' Mem.") at 10, Ex. A at 1-2) --

are insufficient to form the basis of a viable Title VII cause of

action.  (Defs.' Mem. at 7.)  Carson argues the defendants are

"trivializ[ing] the seriousness of this litigation" and that his

charge of discrimination sufficiently contained allegations of

race and sex discrimination and retaliation to survive the

defendants' motion.  (Pl.'s Opp'n at 13.)

    "Before suing under either the ADEA or Title VII, an

aggrieved [non-federal employee] must exhaust his administrative

remedies by filing a charge of discrimination with the EEOC

within 180 days of the alleged discriminatory incident."

Washington v. Washington Metro. Area Transit Auth., 160 F.3d 750,

752 (D.C. Cir. 1998).  "'Only after the EEOC has notified the

aggrieved person of its decision to dismiss or its inability to

bring a civil action within the requisite time period can that

person bring a civil action herself.'"  Browne v. Potomac Elec.

<u>Power Co.</u>, Civil Action No. 05-1177 (RWR), 2006 WL 1825796 at *2 (D.D.C. July 3, 2006) (quoting <u>Park v. Howard Univ.</u>, 71 F.3d 904, 907 (D.C. Cir. 1995)).  Thereafter, a Title VII lawsuit following an administrative charge of discrimination is limited in scope to the claims that were included in the charge.  <u>Iweala v. Operational Techs. Servs.</u>, 634 F. Supp. 2d 73, 83 (D.D.C. 2009).

Here, Carson provides no evidence that he filed any administrative charges of discrimination regarding the incidents of discrimination that were not included in the January 2004 charge of discrimination.[2]  While Carson notes that his charge of discrimination does contain allegations of race and sex discrimination and retaliation, the issue is whether Carson exhausted his administrative remedies for the discrete incidents of discrimination other than the October 2003 denial of his application for a promotion to a crew leader position, and the September 2003 revocation of his temporary assignment to the lead mechanic position.  Carson has provided nothing to show that he even attempted to exhaust his administrative remedies for the incidents not included in the charge of discrimination.  <u>See Shipman v. Vilsack</u>, 692 F. Supp. 2d 113, 116 (D.D.C. 2010) (dismissing unexhausted claims where the plaintiff did not refute

_____

[2] Carson provides no argument that the doctrine of equitable tolling should be applied to revive the claims about the incidents that were not included in the EEOC charge.

"that she did not exhaust certain claims and she has not provided any argument for equitable tolling").

The defendants further argue that the incidents of discrimination and retaliation alleged in Carson's administrative charge are insufficient as a matter of law to support Carson's claims under Title VII. They assert that a prima facie case of race and sex discrimination when Pepco denied him the October 2003 crew leader promotion requires proof that the positions were filled by persons outside of his protected class. Since both employees who were promoted were men and one was black, they say, Carson's claim fails.

The defendants' premise is wrong. Title VII does not require an allegation or a showing that Carson's promotion request was rejected in favor of anyone outside of his protected class. The fact that an employer selects a person from within the same protected class is not, by itself, grounds for dismissing a Title VII claim. Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002). Nor must a Title VII complaint contain facts establishing a prima facie case. Twombly, 550 U.S. at 569 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 (2002)). Beyond the pleading stage, Carson may still demonstrate in establishing a prima facie case that "the employer treated [him] worse than others because [he] was a member of the protected class." Stella, 284 F.3d at 145. Pepco's selection of employees

within Carson's protected class may bear upon the ultimate question of whether discrimination was at the root of Pepco's decision to deny the promotion to Carson, but such evidence alone does not doom Carson's prima facie case. Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1153 (D.C. Cir. 2004); see also Stella, 284 F.3d at 146 (disavowing the language in Brown v. Brody, 199 F.3d 446, 451 (D.C. Cir. 1999) that a sex discrimination claim regarding lateral transfers would be baseless because two of the employees selected were women); Ginger v. Dist. of Columbia, 527 F.3d 1340, 1344 (D.C. Cir. 2008); George v. Leavitt, 407 F.3d 405, 412-13 (D.C. Cir. 2005); Wada v. Tomlinson, 517 F. Supp. 2d 148, 195 (D.D.C. 2007). In any event, Carson's allegation that Pepco denied his promotion request and promoted a white person with less seniority and experience is factually sufficient to state a claim of racial discrimination that is facially plausible.[3]

## II.  BREACH OF CONTRACT

In Counts III through V, Carson alleges that Pepco breached his employment contract, as codified in the collective bargaining

---

[3] The facts that Carson does plead regarding sex discrimination bear not upon the October 2003 promotion denial or the refusal to enroll him in training, but upon Pepco repeatedly giving temporary upgrades to a woman who allegedly had less seniority and experience rather than to him. (See Carson Aff. ¶¶ 24-25, 34.) The upgrades claim, like the enrollment claim in Count II, is unexhausted. Thus, only the race claim in Count I survives, and the remainder of Count I and all of Count II will be dismissed.

agreement ("CBA"), in three ways.  He claims Pepco denied him
medical benefits from 2003 through 2006 (Am. Compl. ¶ 15), denied
him entry into training programs that would qualify him for
permanent promotion to positions to which he was temporarily
appointed (Am. Compl. ¶¶ 19-22), and denied him workers
compensation benefits from 2003 through 2006.  (Am. Compl. ¶¶ 23-
25.)  The defendants move to dismiss Counts III through V as pre-
empted by Section 301 of the Labor Management Relations Act
("LMRA"), 29 U.S.C. § 185 et seq., because they require
interpretation of the CBA, Carson failed to exhaust the grievance
and arbitration requirements of the CBA, and the six-month
limitations period applicable to actions brought under Section
301 of the LMRA expired before Carson raised his claims.  (Defs.'
Mem. at 13-17.)

     While Carson argues that his breach of contract claims are
not preempted by the LMRA, he agrees that his breach of contract
claims require interpretation of the CBA.  (Pl.'s Opp'n at 14.)
"Section 301 [of the LMRA] completely preempts any action
predicated upon state law if that action 'depends upon the
meaning of a collective-bargaining agreement.'"  Cephas v. MVM,
Inc., 520 F.3d 480, 484 (D.C. Cir. 2008) (quoting Lingle v. Norge
Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988)).  "The
pre-emptive force of § 301 is so powerful as to displace entirely
any state cause of action 'for violation of contracts between an

employer and a labor organization.'" <u>Cephas</u>, 520 F.3d at 484

(quoting <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>,

463 U.S. 1, 23 (1983)). "Section 301 of the LMRA not only gives

federal courts jurisdiction over claims involving labor contract

disputes but also requires courts to apply federal substantive

law to such disputes." <u>Bush v. Clark Constr. & Concrete Corp.</u>,

267 F. Supp. 2d 43, 46 (D.D.C. 2003) (citing <u>Textile Workers of

America v. Lincoln Mills</u>, 353 U.S. 448, 456 (1957) and <u>Avco Corp.

v. Aero Lodge No. 735</u>, 390 U.S. 557, 560 (1968)). "In order to

prevent the possibility of the terms in a CBA being given

different meanings under state law and federal law, the Supreme

Court concluded that 'in enacting § 301 Congress intended

doctrines of federal labor law to uniformly prevail over

inconsistent state rules.'" <u>Bush</u>, 267 F. Supp. 2d at 46 (quoting

<u>International Bhd. of Elec. Workers v. Hechler</u>, 481 U.S. 851, 857

(1987)).

"As a general rule, an employee-plaintiff who is subject to

a collective bargaining agreement must seek to resolve [his]

contract dispute under the agreement's grievance and arbitration

procedures before he . . . can maintain a suit against his . . .

union or employer." <u>Plain v. AT&T, Corp.</u>, 424 F. Supp. 2d 11, 23

(D.D.C. 2006) (citing <u>Republic Steel Corp. v. Maddox</u>, 379 U.S.

650, 653 (1965) and <u>Commc'n Workers of Am. v. AT&T</u>, 40 F.3d 426,

434 (D.C. Cir. 1994)); <u>see also</u> <u>Chester v. Wash. Metro. Area</u>

<u>Transit Auth.</u>, 335 F. Supp. 2d 57, 64 (D.D.C. 2004)(quoting

<u>Republic Steel Corp</u>. for the proposition that "plaintiff 'may not

seek redress in court on claims that could and should have been

grieved'").

Here, Article 17 of the CBA covering Carson's employment

sets forth a grievance procedure for purported violations of the

CBA. (Defs.' Mem. Ex. C.) The defendants assert, and Carson

does not contradict, that Carson did not file any grievance or

otherwise follow the procedure set forth in Article 17 regarding

the breach of contract claims. Therefore, Carson failed to

exhaust his administrative remedies under the CBA and Counts III,

IV, and V will be dismissed. <u>See</u> <u>Bush</u>, 267 F. Supp. 2d at 46

(dismissing the plaintiff's claim for failing to exhaust

administrative remedies because employees covered by a CBA "must

attempt to use the grievance procedures previously agreed upon by

the employer and union before resorting to any other form of

redress").

III. DISABILITY DISCRIMINATION

In Count VI, Carson alleges that the ADA was violated when

Pepco, "aware of his disability caused by workplace stress,

refused to accommodate him in the workplace and did terminate his

employment asserting Carson's failure to return to work." The

defendants argue that Count VI should be dismissed because Carson

did not exhaust his administrative remedies by including a claim

of disability discrimination in his charge of discrimination filed with the D.C. Office of Human Rights and the EEOC.

"A plaintiff seeking to file a civil action for disability discrimination under the ADA is required to exhaust his administrative remedies first." Smith v. Janey, 664 F. Supp. 2d 1, 9 (D.D.C. 2009) (citing 29 U.S.C. § 626(d) and Jones v. Univ. of Dist. of Columbia, 505 F. Supp. 2d 78, 81-82 (D.D.C. 2007) (dismissing ADA claims for failure to exhaust administrative remedies)). "The ADA requires exhaustion of administrative remedies by filing an administrative charge with the EEOC within 180 days of the alleged discriminatory action, unless the plaintiff has first filed administrative proceedings with a state or local agency, in which case the limitations period is extended to a maximum of 300 days." Ling Yuan Hu v. George Wash. Univ., Civil Action No. 10-1939 (RMC), 2011 WL 713700, at *3 (D.D.C. Mar. 2, 2011) (citing Gupta v. Northrop Grumman Corp., 462 F. Supp. 2d 56, 58 (D.D.C. 2006)). Carson's charge of discrimination does not mention disability discrimination nor was the box next to the option for disability discrimination checked on the charge sheet. He offers no basis for finding that his failure to exhaust this claim is not fatal. Count VI will be dismissed.

IV.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In Count VII, Carson alleges that Pepco, "by way of its
agents, created an egregiously emotionally and physically
threatening environment," which resulted in Carson's emotional
breakdown and irreparably damaged his marital relationship, self-
image, and his ability to interact with the public.  (Am. Compl.
¶¶ 29-32.)  The defendants argue that this count should be
dismissed because it is preempted by the D.C. Workers'
Compensation Act ("WCA"), and that even if it were not preempted,
Count VII fails to state a claim for which relief could be
granted.  (Defs.' Mem. at 21-24.)  Carson counters that he
properly pled his claim of intentional infliction of emotional
distress because "denial of worker's compensation benefits by
Pepco, which [Carson] is clearly entitled to, is yet another
example of retaliation."  (Pl.'s Opp'n at 16.)

Under District of Columbia law, a prima facie case of
intentional infliction of emotional distress requires proof of
"(1) extreme and outrageous conduct on behalf of the defendant
which (2) intentionally or recklessly (3) causes the plaintiff
severe emotional distress."  Larijani v. Georgetown Univ., 791
A.2d 41, 44 (D.C. 2002).  "The conduct must be 'so outrageous in
character, and so extreme in degree, as to go beyond all possible
bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community.'"  Id. (quoting Homan v.

<u>Goyal</u>, 711 A.2d 812, 818 (D.C. 1998)). "In determining whether specific acts rise to the extreme and outrageous level, courts are guided by '(1) applicable contemporary community standards of offensiveness and decency, and (2) the specific context in which the conduct took place.'" <u>Halcomb v. Woods</u>, 610 F. Supp. 2d 77, 80 (D.D.C. 2009) (quoting <u>King v. Kidd</u>, 640 A.2d 656, 668 (D.C. 1993)).

Carson's amended complaint does not plausibly allege a viable claim of intentional infliction of emotional distress. It alleges the type of conduct that generally accompanies a disharmonious employment relationship. In general, "employer-employee conflicts do not rise to the level of outrageous conduct" necessary for a viable claim of intentional infliction of emotional distress. <u>Duncan v. Children's Nat'l Med. Ctr.</u>, 702 A.2d 207, 211-12 (D.C. 1997) (affirming dismissal of intentional infliction of emotional distress claim); <u>see</u> <u>also</u> <u>Kerrigan v. Britches of Georgetowne</u>, 705 A.2d 624, 628 (D.C. 1997) (holding that allegation that employer fabricated a sexual harassment charge against employee, manufactured evidence to use against him on that charge, and unjustifiably demoted him, "even construed as true, was of the type attributable to employer-employee conflicts that do not, as a matter of law, rise to the level of outrageous conduct" necessary to state a viable

claim of intentional infliction of emotional distress, and
affirming dismissal of claim) (internal quotation omitted).

Even if Carson had sufficiently pled extreme or outrageous
behavior by Pepco, Carson would still need to demonstrate that
his common law claim of intentional infliction of emotional
distress is not preempted by the WCA. "The [Workers']
Compensation Act is a comprehensive legislative scheme requiring
employers to provide compensation for employees who are disabled
or killed in the course of employment." Harrington v. Moss, 407
A.2d 658, 660 (D.C. 1979) (citing D.C. Code § 36-501, and 33
U.S.C. § 903). "The Act . . . provides employees with a
practical and expeditious remedy for work-related accidents or
injuries." Harrington, 407 A.2d at 660. "The Act . . . deprives
employees and their representatives of the right to pursue common
law tort suits, such as wrongful death actions, against their
employers or co-workers if the injuries are covered by the Act."
Id. at 660-61 (citing Ciarrocchi v. James Kane Co., 116 F. Supp.
848, 851 (D.D.C. 1953). In other words, "if an injury is within
the Act's coverage, an employee (or representative) may only
pursue a claim before the Benefits Review Board," and may not
pursue such a claim in court. Harrington, 407 A.2d at 661
(citing O'Rourke v. Long, 359 N.E.2d 1347, 1350 (N.Y. 1976)).

A claim for the tort of intentional infliction of emotional
distress falls within the Act's coverage. See Tatum v. Hyatt

Corp., 918 F. Supp. 5, 8 (D.D.C. 1994) (dismissing the
plaintiff's claims of assault and battery, intentional infliction
of emotional distress, and negligent infliction of emotional
distress because the WCA provided the exclusive remedy for the
plaintiff's workplace injuries); Ramey v. Potomac Elec. Power
Co., 468 F. Supp. 2d 51, 55-56 (D.D.C. 2006) (dismissing the
plaintiff's common law claims, including claims of intentional
infliction of emotional distress and negligent infliction of
emotional distress, because the WCA provided the exclusive remedy
for those common law claims and the plaintiff did not demonstrate
that his claims fell outside of the WCA). "[B]ecause the WCA
contains a number of presumptions that favor coverage, the
employee bears the burden of proving that the WCA does not
apply." Hamilton v. Sanofi-Aventis U.S. Inc., 628 F. Supp. 2d
59, 63 (D.D.C. 2009). Here, Carson argues that he properly pled
this claim because "denial of worker's compensation benefits by
Pepco, which [Carson] is clearly entitled to, is yet another
example of retaliation." (Pl.'s Opp'n at 16.) This assertion
falls short of Carson meeting his burden to show that the WCA
does not preempt this claim. Therefore, Count VII will be
dismissed.

V.    RETALIATORY DISCHARGE

     Count VIII is captioned as a retaliatory discharge claim,
although the text of the count makes the intended nature of the

claim ambiguous.  Carson alleges that Pepco terminated his
employment in 2006 in retaliation for Carson seeking promotions
and medical benefits and filing a worker's compensation claim.
(Am. Compl. ¶ 33.)  The defendants argue that if the claim is a
common law claim, it is preempted because there is a statutory
remedy for such purported contract violations, and it fails to
state a cognizable wrongful discharge claim.  (Defs.' Mem. at 24-
26.)  They add that if the claim is a statutory claim under Title
VII, it is unexhausted.  (Defs.' Mem. at 10.)  Carson's
opposition maintains that Count VIII was brought under Title VII,
despite the fact that the amended complaint cites Title VII as
the basis for only Counts I and II, and Count VIII nowhere cites
to Title VII.  Whichever cause of action Count VIII is intended
to allege, it fails.

     As is discussed above, Counts III through V do not plead
viable breach of contract claims for violations of the CBA
because Carson did not file any grievance or otherwise follow the
procedure set forth in Article 17 of the CBA.  To the extent that
Count VIII pleads a claim for violations of the WCA, he has not
shown that such an unexhausted claim would not be similarly
preempted by statute.  See Harrington, 407 A.2d at 660.

     Similarly, to the extent that Count VIII is intended to
plead a common law claim of wrongful discharge, it does not.  "In
some circumstances, [courts in the District of Columbia] have

recognized a common law tort of wrongful discharge 'as an
exception to the traditional at-will doctrine governing
termination of employment, where the discharge violates a clear
mandate of public policy.'"[4] Carter v. Dist. of Columbia, 980
A.2d 1217, 1225 (D.C. 2009) (quoting Dist. of Columbia v.
Beretta, U.S.A., Corp., 872 A.2d 633, 645 (D.C. 2005) (internal
quotation omitted)).  The mandate of public policy must "be
firmly anchored in either the Constitution or in a statute or
regulation which clearly reflects the particular 'public policy'
being relied upon," and it must arise from a statute or
regulation that does not provide its own remedy.  Potts v. Howard
Univ. Hosp., 736 F. Supp. 2d 87, 97 (quoting Warren v. Coastal
Int'l Secs., Inc., 96 Fed. Appx. 722, 722-23 (D.C. Cir. 2004));
see also Carter, 980 A.2d at 1226 (declining to create a new
exception to the at-will employment doctrine in order to
vindicate a public policy since a statute specifically
articulated the policy and created a cause of action to enforce
it).  One of those circumstances is where "'the sole reason for
[the employee's] discharge [was] the employee's refusal to
violate the law." Potts, 736 F. Supp. 2d at 97 (quoting Adams v.
George W. Cochran & Co., 597 A.2d 28, 34 (D.C. 1991)); see also

_____

    [4] The District of Columbia Court of Appeals has held that the
tort of wrongful discharge in violation of public policy is
available for both at-will employees and contractual employees.
Byrd v. VOCA Corp., 962 A. 2d 927, 934 (D.C. 2008).

Fingerhut v. Children's Nat'l Med. Ctr., 738 A.2d 799, 802, 807
(D.C. 1999) (reversing dismissal of the plaintiff's wrongful
discharge claim, where the plaintiff alleged that he was fired
for refusing to violate District of Columbia statutes).  Other
circumstances where the courts in the District of Columbia have
recognized claims for wrongful discharge in violation of public
policy include termination in retaliation for testifying about a
matter of public policy before the District of Columbia Council,
see Carl v. Children's Hosp., 702 A.2d 159 (D.C. 1997), and
termination in retaliation for protesting violations of health,
food, and safety regulations.  See Washington v. Guest Servs.,
Inc., 718 A.2d 1071 (D.C. 1998).  Here, Carson's amended
complaint identifies no public policy violated by his termination
that cannot be enforced by existing causes of action, nor does it
allege that Pepco terminated his employment for refusing to
violate a law, for testifying about a matter of public policy, or
for protesting regulatory violations.

Finally, the text of Count VIII cannot be stretched to imply
a viable claim of retaliation in violation of Title VII.  "The
elements of a claim of retaliation [under Title VII] are that the
plaintiff engaged in a statutorily protected activity, the
employer treated the plaintiff adversely, and a causal connection
existed between the two."  Winston v. Clough, 712 F. Supp. 2d 1,
11 (D.D.C. 2010) (internal citations omitted).  Not only does

Count VIII not specify that the retaliatory discharge violated
Title VII or even mention Title VII, Carson does not argue that
he made any attempt to exhaust his administrative remedies
regarding such a discharge.  Nor does he offer any authority
holding that his failure to exhaust his retaliation claim is not
fatal because the claims were sufficiently related to his
administratively exhausted claims.  "Title VII '[c]omplainants
must timely exhaust the[ir] administrative remedies before
bringing their claims to court.'"  Payne v. Salazar, 619 F.3d 56,
65 (D.C. Cir. 2010) (quoting Bowden v. United States, 106 F.3d
433, 437 (D.C. Cir. 1997)).  There is unresolved[5] discord in this
circuit between district courts that have held that a plaintiff
must exhaust his administrative remedies with respect to acts
that occurred after the filing of an initial administrative
charge, see, e.g., Taylor v. Mabus, 685 F. Supp. 2d 94, 99
(D.D.C. 2010); Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139,
148-50 (D.D.C. 2005) (stating that Nat'l R.R. Passenger Corp. v.
Morgan, 536 U.S. 101, 113 (2002) "has, on the whole, been
understood to . . . bar [unexhausted claims of retaliation based
on] discrete acts occurring after the time period, after the

---

[5] See Weber v. Battista, 494 F.3d 179, 183-84 (D.C. Cir.
2007) (declining to decide whether a claim arising after the
filing of a formal administrative complaint must be raised with
the agency's EEO office before being brought in the district
court).

filing of an administrative complaint, when a plaintiff does not file a new complaint or amend the old complaint but instead presents these acts for the first time in federal court"); Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 137-38 (D.D.C. 2004) (dismissing post-administrative complaint retaliation claim where the plaintiff failed to exhaust, and stating that there was "no reason" to treat post-administrative complaint retaliation charges "differently from other complaints of discrete acts"); and district courts that have held that claims of retaliation based on acts that occurred after an initial charge was filed need not be separately exhausted where they necessarily would have come within the "scope of any investigation that reasonably could have been expected to result from [the] initial [EEO] charge." See Hazel v. Wash. Metro. Area Transit Auth., Civil Action No. 02-1375 (RWR), 2006 WL 3623693, at *8 (D.D.C. Dec. 4, 2006); Thomas v. Vilsack, 718 F. Supp. 2d 106, 121 (D.D.C. 2010) (following Hazel and progeny, but granting motion to dismiss where the purported retaliation was not "of a like kind" to the allegations in the plaintiff's EEO complaint). Here, Carson pleads no facts plausibly showing that the 2006 discharge referred to in Count VIII was caused by or is of a like kind to the claims preserved in Carson's 2003 charge of discrimination. Therefore, this claim will be dismissed.

## CONCLUSION AND ORDER

Carson has alleged no acts against Sim and he will be dismissed as a defendant. Except for the race discrimination claim in Count One regarding the promotion Pepco denied Carson in October 2003, he failed to state a claim for which relief can be granted in Counts I, II, and VI through VIII. Carson's claims in Counts III through V are preempted by statute. Therefore, it is hereby

ORDERED that the defendant's motion [20] be, and hereby is, GRANTED IN PART and DENIED IN PART. The amended complaint is dismissed as to defendant Sim. All claims in the amended complaint, except for the race discrimination claim in Count I regarding the promotion Pepco denied Carson in October 2003 are dismissed.

SIGNED this 22nd day of April, 2011.

                       /s/ _____
                       RICHARD W. ROBERTS
                       United States District Judge